## Chicago Union Traction Company v. Inga Newmiller.

### Gen. No. 11,567.

1. INSTRUCTION—*approved form of, pertaining to care to be exercised where danger suddenly arises.* An instruction upon this subject as follows: "The court instructs the jury that if a person without fault upon her part, is confronted with sudden danger or apparent sudden danger, the obligation resting upon her to exercise ordinary care for her own safety does not require her to act with the same deliberation and foresight which might be required under ordinary circumstances," approved.

2. INSTRUCTION—*assumption of uncontroverted fact.* It is not error for the court, in instructing the jury, to assume the existence of an uncontroverted and admitted fact.

3. NEGLIGENCE—*when burden to meet charge of, shifts from passenger to carrier.* Where it is shown by the evidence that the relation of passenger and carrier exists, that an explosion occurred in one of the cars of the train on which the plaintiff was riding. and that an injury resulted to her. the burden shifts to the carrier to show that it was not negligent in the premises.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed October 31, 1904.

JOHN A. ROSE and LOUIS BOISOT, for appellant; W. W. GURLEY, of counsel.

JOHN F. WATERS and C. H. JOHNSON, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

The declaration in this case consists of two counts. In the first count it is averred, in substance, that the plaintiff, appellee here, was a·passenger on one of the defendant's cars, and was exercising ordinary care, and that, by reason of defendant's negligence, a fuse exploded, causing a loud report and large flame and smoke on the car, which caused a panic among the passengers, who made a rush for the rear door and platform, whereby plaintiff was pushed and thrown from the car and injured, etc. In the second count, instead of averring that a fuse exploded, it is averred that an explosion occurred on the car. In other respects this count is substantially the same as the first. Appellant's counsel moved in arrest of judgment, and now urges that the declaration is insufficient to support a judgment. The objection is that it is not averred that appellee was injured by the explosion, but merely by the conduct of the passengers. We think the objection untenable, and that the motion in arrest was properly overruled. Appellant pleaded the general issue. The jury found for appellee and assessed her damages at the sum of $4,500 and judgment was rendered for that amount.

Appellant's counsel contend that the evidence is insufficient to sustain the verdict, that it does not show that the explosion was caused by appellant's negligence, or that appellee exercised due care. The car in which the explosion occurred was about forty feet long, and the seats were lengthwise along its sides. It was operated by electricity. It had a controller at each end. The car was moving east on Lake street, at the time of the accident, and the controller, at its east or front end, was situated a little to the left of the center of the front platform. The number of passengers on the car at the time of the accident is variously stated by the witnesses from twenty to thirty-five. Among

these were a number of women and children. Appellee sat at the extreme rear end of the car, on the north side of it. As the car reached about the middle of Garfield Park, through which park Lake street lies, there was an explosion at its front or east end, and a loud report, and a flame shot up from the controller. Some of the witnesses testify that the report of the explosion was quite loud, like the report of a shotgun. One witness says like the report of a shotgun at the distance of 200 yards. The motorman says that the report was like that of a firecracker. There can be no doubt, from the evidence, that it was sufficiently loud to be heard by every one in the car. At the instant of the explosion a blaze came from the controller.

Charles Richter, motorman of the car, called as a witness by appellant, testified: "A blaze shot out of the controller which frightened the ladies on the car. The blaze came out from the top of the controller. The top was made of brass. There are no holes there for the blaze to come through, but it is open enough for it to come through from underneath. It came sudden. It went off like a fuse and made a noise like a firecracker. The blaze shot up as high as the top of my head. The entire front of that platform was enclosed. It came out in a pretty good blaze, but only for about half a second or so; for a few seconds, and then I threw off the current. I had to turn around to the overhead switch to turn off the current. It is over my head to the rear of me. I have to make two steps in order to turn off that current. That destroyed the fire; turned off the current."

Other witnesses testified that the flame reached the ceiling of the car in front. Two witnesses testified that the motorman jumped back into the body of the car. Fred Plante testified: "I was on the front platform smoking, with the motorman. I was looking east, and all at once the explosion came up in the motor, and there was a flame come right up to the ceiling, and as soon as I seen that I ran toward the back end then, and when I turned around, and just as I turned around the flame kind of scorched my fingers, and I seen the people were jumping off the car."

Edward F. Kane, machinist and stationary engineer, testified that there was no flame inside the car until the door was opened by the gentleman on the front vestibule; that he opened the door and the flame came in through the door. Mr. Kane further testified : " After the people were taken away—this lady and another lady who received a scalp wound—I went up and looked at the controller, and it was an entire mass of molten metal. The parts of the controller were all molten metal like it was in a furnace. I couldn't tell at the time what kind of metal the controller was made of. They are usually made of copper. I have had about fifteen years' experience in making or working around machinery. I have had about four years' experience in electricity. The metal part of the controller was a mass of melted metal. I mean by that the inside of the controller. There was a hole about two and three-quarters or three inches in diameter in the covering of the controller. The intense heat caused that hole." The motorman testified that the top of the controller was made of brass.

We will next consider the effect on the passengers of the explosion, with its accompaniment of noise and flame. Three witnesses testified that the passengers in the car made a rush for the rear door and platform.

Doctor C. B. King was a passenger on the car, and testified that the women and children in the back part of the car became frightened, some of them screamed, and they all tried to go out of the door at once; that he noticed them trying to climb over each other, to get out first; that every one went as fast as possible, till some landed on the ground; that it was a regular panic.

Mrs. Lillian Fordyce testified that the car filled with smoke and the flame went through to the middle of the car and that they all left their seats, and she jumped up, and supposes the others did; that she tried to get back, and they kept on pushing her and pushed her right out of the back door, and kept pushing her until she saw she was going to be pushed off the car, and jumped off to save herself.

It appears from the evidence that the car was moving at the rate of six or seven miles per hour at the time of the accident. That the passengers were frightened and rushed toward the rear platform is not controverted. Appellee, who sat near to the rear platform, testified that the conductor was up in front collecting fares when the explosion occurred, and that he then ran back to the rear end, and that, when she witnessed the explosion, and when others were running, she got up and walked to the rear platform, and had barely reached the platform and got hold of the side by the steps, when she was pushed off the car and fell to the street. The conductor of the car testified that two ladies, appellee being one of them, stepped from the car; but Mr. Kane, who had moved from the front vestibule to the rear platform immediately after the explosion, testified that appellee fell off the car backwards, and that she did not jump off.

Whether appellee exercised ordinary care, and whether appellant was guilty of negligence, were questions for the jury, and we think the evidence is sufficient to sustain the verdict, and that the verdict is not manifestly contrary to the weight of the evidence.

Appellant's counsel contend that the giving of each of the following instructions, at appellee's request, was error:

1. "The court instructs the jury that if a person without fault on her part, is confronted with sudden danger or apparent sudden danger, the obligation resting upon her to exercise ordinary care for her own safety does not require her to act with the same deliberation and foresight which might be required under ordinary circumstances."

4. "The court instructs the jury that if you believe and find from the evidence that the plaintiff was a passenger on one of defendant's cars, and while such passenger, she was in the exercise of ordinary care for her own safety, an explosion occurred on said car by reason of which a panic was caused among the passengers on said car, in consequence of which the plaintiff, without fault on her part, was pushed from said car and thereby injured, then the plaintiff has made out a *prima facie* case of negligence against the defendant, and this places upon the defendant

the burden of rebutting that presumption by proving that the explosion could not have been prevented by all that human care, vigilance and foresight could reasonably do consistent with the mode of conveyance and the practical operation of the road."

The objections urged to instruction 1 are that it is an abstract proposition of law, and is erroneous in omitting the qualification that the danger must be such as to be apparent to a person of reasonable prudence and common sense. We do not think the instruction abstract in the sense that there is no basis for it in the evidence. If, as was testified to by some of the witnesses, the flame reached into and nearly to the center of the car, then, certainly there was sudden and apparent danger of fire, and we think it would so appear to a person of ordinary prudence. Apparently the passengers generally so thought, and it can hardly be predicated of all those who sought to escape the apparent danger that they were all lacking in ordinary prudence or common sense.

The objection urged to instruction 4 is that "the element of the defendant's alleged negligence, in allowing the explosion, is taken from the jury, and the mere fact of the explosion itself is treated as sufficient evidence of negligence." Conceding that the instruction, technically considered, should have contained the element that the controller was in the control of the appellant, as by the use of the words, *in the controller of the car*, or *in the appliances of the car*, immediately next after the words, "explosion occurred on said car," this cannot prejudice appellant, because it is an uncontested fact, and is admitted in the argument of appellant's counsel, they saying : "Suddenly there was a flash and a report from the controller, on the front platform of the car." It is not error for the court, in instructing the jury, to assume the existence of an uncontroverted and admitted fact.

Appellant's refused instruction 5 is substantially included in its given instructions 6 and 13.

It having been shown by the evidence for appellee that the explosion occurred in the controller of appellant's car,

on which she was a passenger, the burden was shifted to appellant to show that it was not negligent in the premises. Booth on Street Railways, Sec. 361, cited with approval in Chicago City Ry. Co. v. Rood, 163 Ill. 477, 482; Transportation Co. v. Downer, 11 Wallace, 129. In the latter case the court say: "A presumption of negligence from the simple occurrence of an accident seldom arises, except when the accident proceeds from an act of such a character that, when due care is taken in its performance, no injury ordinarily ensues from it in similar cases, or where it is caused by the mismanagement or misconstruction of a thing over which the defendant has immediate control, and for the management and construction of which he is responsible."

Counsel contend that it does not appear that appellee was injured by the explosion; that the claim is that she was injured by being crowded or pushed off the car by the rush of the passengers to the rear platform. The explosion was the cause of the rush of the passengers to the rear platform, and the evidence tends to prove that such rush was the cause of the injury to appellee. In Am. Ex. Co. v. Risley, 179 Ill. 295, the court quotes with approval the following from Shearman & Redfield on Negligence: "Negligence may, however, be the proximate cause of the injury of which it is not the sole or immediate cause. If the defendant's negligence concurred with some other event (other than the plaintiff's fault) to produce the plaintiff's injury, so that it clearly appears that but for such negligence the injury would not have happened, and both circumstances are closely connected with the injury in the order of events, the defendant is responsible, even though his negligent act was not the nearest cause in the order of time. * * * The practical construction of 'proximate cause' by the courts is a cause from which a man of ordinary experience and sagacity could foresee that the result might probably follow."

Cassady v. Old Colony Street Ry. Co., 68 N. E. Rep. 10, cited by appellant's counsel, is against appellant. A judg-

ment for the plaintiff was affirmed in that case, the court say-ing: "The jury, upon the evidence, may have found that the flame in this case was not the instantaneous and harm-less flame which results from the burning out of a fuse when in proper condition; that the burning of this fuse was at-tended with unusual results, which would not have occurred if the fuse had been in proper condition; and that the most reasonable conclusion was that, if proper care had been exercised, there would have been no such flame. We can-not say that such a conclusion was not warranted by the evidence."

The appellant's witnesses were unable to state the cause of the explosion. The motorman, after stating on cross-examination that he did not know, and had no idea what caused the explosion, testified that it was caused by too much electricity running in at that place; that, if the con-troller is turned around too quick, it will burn out; also, that he was feeding at the time with his crank, pulling it around.

James Powers testified that he had charge of appellant's electrical repair work. On cross-examination, he stated a number of things which might cause the flame, but nega-tived the existence of none of them. He testified that the sudden turning on of a large volume of electricity would also cause it, and that bad insulation might cause it. The evidence of the motorman is that he shut off the flame by throwing off the current.

We think the jury justified in finding that appellant failed to disprove negligence.

The judgment will be affirmed.

*Affirmed.*